## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| PAUL BRUCE | * | |
| | * | |
| | * | |
| v. | * | Civil No. CCB-13-3200 |
| | * | |
| | * | |
| FAIR COLLECTIONS & | * | |
| OUTSOURCING, INC. | * | |

****** 

## MEMORANDUM

Plaintiff Paul Bruce brings this lawsuit against former employer Fair Collections & Outsourcing, Inc. ("FCO"), alleging violations of Title VII of the Civil Rights Act of 1964 and wrongful termination under Maryland law.[1]  He claims that he was sexually harassed and discriminated against based on his religious beliefs as a Christian.  Now pending before the court is FCO's motion to dismiss or, in the alternative, for summary judgment.  The issues in this case have been fully briefed, and no hearing is necessary.  *See* Local R. 105.6.  For the reasons stated below, FCO's motion—treated as a motion to dismiss—will be granted in part and denied in part.

## BACKGROUND

Bruce began working at FCO as a Debt Collector on January 18, 2011.  He alleges that, approximately three months later, he began experiencing "repeated, persistent, and unwanted sexual advances" from his supervisor, Renee Carroll.  (Compl., ECF No. 1, at 5.)  The first alleged incident occurred on April 22, 2011, when Carroll approached him from behind, placed a

---

[1] Bruce voluntarily dismissed claims for battery and tortious interference with contract and all individual claims against defendant Renee Carroll.  (*See* ECF Nos. 9 & 10.)

banana on his right shoulder, and asked him, "Would you like a bite of my banana?"  (*Id.*)  Bruce

"sternly" declined, and gave Carroll "an unfriendly look."  (*Id.* at 6.)[2]  During a second alleged

incident, Carroll approached him at his desk, placed a service dog on his head and neck, and

began rubbing the dog against him.  Bruce, finding this contact unwelcome, jumped up from his

desk in surprise.  Carroll then asked him if he wanted "to rub her baby."  (*Id.*)  Bruce did not say

anything in response to Carroll's behavior.  On a third occasion, while Bruce was on a break

with a co-worker, Carroll placed her hand on Bruce's abdomen and touched his belt.  Bruce

"recoiled" from her, although he again did not say anything in response.  (*Id.* at 8.)  Finally, on

August 12, 2011, Carroll asked him if he "needed a hug today," to which Bruce responded "in

blunt language to leave him alone" and that her conduct "had gotten out of hand."  (*Id.*)  Bruce

considered filing a sexual harassment report against Carroll with FCO Vice President Kevin

Martin, but he decided not to do so out of fear of retaliation.[3]

      In addition to claiming sexual harassment, Bruce alleges that Maurice Gordon, a manager

at FCO, treated him differently from Muslim co-workers.  On June 6, 2011, Gordon told Bruce

to remove his Bible from his desk.  Bruce responded that Muslim employees were permitted to

keep religious scriptures on their desks, and so he should be allowed to do so.  Gordon, however,

did not reply, and Bruce made no additional request to keep his Bible on his desk.

      According to Bruce, the above events culminated in his termination on August 15, 2011.

Martin told him that his termination was due to his "work performance" and "negative response

---

[2] Following this incident, Bruce began avoiding the lunchroom and other areas where Carroll
might frequent.  Nevertheless, despite Bruce's efforts to avoid Carroll, she issued him "a total of
five 'write-ups' for violations of company policies," all of which came "in rapid succession"
after April 22, 2011.  (Compl. at 7.)

[3] Bruce claims that he feared retaliation because of a recent encounter with an FCO manager,
Maurice Gordon, in which he complained about a non-sexual harassment matter.  According to
Bruce, Gordon responded to his complaint by publicly humiliating him.

towards [Carroll]." (*Id.*)  Bruce claims that he never received an explanation as to why his

behavior toward Carroll was unacceptable, nor had he previously received any warning or

counseling regarding his performance at work.

      After his termination, Bruce filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") on July 28, 2012.  (*See* Charge of Discrimination, ECF No.

5-26.)[4]  The EEOC, upon investigation of Bruce's claims, was unable to conclude that FCO

violated Title VII, and informed Bruce of his right to sue on July 30, 2013.  (*See* Dismissal and

Notice of Rights, ECF No. 1-1.)  Bruce filed this suit on October 28, 2013.[5]

## STANDARD

      FCO has moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in

the alternative, for summary judgment under Fed. R. Civ. P. 56.  Because Bruce has not had a

reasonable opportunity to seek discovery, he cannot properly oppose a motion for summary

---

[4] The charge of discrimination form indicates that Bruce's case was assigned the number 846-2011-84348, which suggests that his case was opened in 2011.

[5] FCO argues that Bruce's Title VII claims are time-barred because he did not file a formal charge of discrimination until July 28, 2012, or more than 300 days after the alleged unlawful employment practices.  *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citation and internal quotation marks omitted) ("The basic limitations period [for filing a charge of discrimination] is 180 days after the alleged unlawful employment practice.  However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.").  As an initial matter, the court determines that Bruce had 300 days after the alleged misconduct to file a charge, as Maryland is a deferral state and the Maryland Commission on Human Relations has a work sharing agreement with the EEOC whereby a claim filed before one commission is effectively filed before both.  *See Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007).  Turning to whether Bruce filed a charge within 300 days, it appears that the EEOC opened Bruce's case in 2011, not in 2012 when he filed a formal charge of discrimination.  Moreover, the EEOC did not dismiss Bruce's claims as untimely; rather, it rejected them on the merits.  Bruce has submitted a FOIA request to receive records from the EEOC, but has not yet received a response.  Should the records reveal his charge of discrimination was not timely filed, the court may dismiss the case at that time.  At this time, however, the court lacks sufficient information to conclude that Bruce failed to file a timely charge.

judgment.  *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013).  Accordingly, the court will treat FCO's motion as a motion to dismiss.

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. . . .  However, the complaint must allege sufficient facts to establish those elements."  *Walters*, 684 F.3d at 439 (quotations and citation omitted).  "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a Rule 12(b)(6) motion, the court does not always have to limit its review

to the pleadings.  It may take judicial notice of public records, including statutes, and may

"consider documents incorporated into the complaint by reference, as well as those attached to

the motion to dismiss, so long as they are integral to the complaint and authentic."  *United States*

*ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir.

2014) (citations and internal quotation marks omitted).

## ANALYSIS

### A.  Sexual Harassment

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer "to fail or

refuse to hire or to discharge any individual, or otherwise to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  Courts

have long endorsed and adopted the EEOC's interpretation that sexual harassment is a form of

prohibited sex discrimination.  *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66

(1986).  Actionable workplace sexual harassment claims come in two forms: (1) claims of a

hostile work environment due to severe or pervasive sexual harassment and (2) claims of *quid*

*pro quo* sexual harassment.  *See Pitter v. Cmty. Imaging Partners, Inc.*, 735 F. Supp. 2d 379, 390

(D. Md. 2010).  Bruce asserts both.

### 1.  Hostile Work Environment

Bruce claims that he was subjected to a hostile work environment as a result of the four

alleged incidents with Carroll.  To establish a hostile work environment claim under Title VII,

the plaintiff must establish that: "(1) []he experienced unwelcome harassment; (2) the harassment

was based on [his] gender, race, or age; (3) the harassment was sufficiently severe or pervasive

to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPoint de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The plaintiff must show not only that he subjectively believed his workplace environment was hostile, but also that a reasonable person would have found it to be objectively hostile. *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). The court considers a number of factors in determining whether a reasonable person would perceive a workplace environment to be sufficiently hostile, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998).

Turning to the instant case, Carroll's alleged conduct, although certainly inappropriate, was not so extreme as to alter the terms and conditions of Bruce's employment. Bruce claims just four discrete incidents occurring over an approximately four-month period. *Cf. Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (finding that male coworkers' almost daily conduct, which included repeatedly simulating sex with a mannequin, directing vulgar and sexually explicit jingles at plaintiff, and presenting her with graphic pornography, were sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment). He alleges one incident in which Carroll asked him if he needed a hug, but the Fourth Circuit has made clear that "a mere offensive utterance" does not constitute severe or pervasive harassment. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315 (citation and internal quotation marks omitted) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). As for Bruce's claims that Carroll touched his head, neck, and shoulder on two

6

separate occasions, they appear to be isolated incidents and, in any event, did not create an environment "permeated with discriminatory intimidation, ridicule, and insult." *Id.* (citation and internal quotation marks omitted).  Finally, his claim that Carroll touched his belt, while the most serious of his allegations, does not by itself form the basis of a hostile work environment claim, as it occurred only once.  *Cf. Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (rejecting a hostile work environment claim where the plaintiff described one encounter in which her employer yelled at her, told her she was incompetent, pushed her down into her chair, and blocked the door to prevent her from leaving).

Moreover, Bruce fails to allege how any of the above incidents caused unreasonable interference with his work.  To the extent Bruce felt he needed to avoid the lunchroom or other areas of the workplace, he fails to explain how this negatively affected his work performance or made it more difficult for him to perform his job.  The court, therefore, will dismiss his claim for hostile work environment.

### 2. *Quid Pro Quo* **Sexual Harassment**

Bruce alleges that, because he rebuffed sexual advances from Carroll, he was written up for disciplinary infractions and eventually terminated.  To prove a claim for *quid pro quo* harassment, an employee must establish the following five elements:

(1) The employee belongs to a protected group.

(2) The employee was subject to unwelcome sexual harassment.

(3) The harassment complained of was based upon sex.

(4) The employee's reaction to the harassment affected *tangible aspects* of the employee's compensation, terms, conditions, or privileges of employment.  The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause a tangible job detriment to create liability . . . .

> (5) The employer . . . knew or should have known of the harassment and took no
> effective remedial action.

*Okoli v. City of Baltimore*, 648 F.3d 216, 222 (4th Cir. 2011) (citation omitted).  Where the

alleged harasser is the employee's supervisor, however, an employer may be vicariously liable

for sexual harassment even if the employer had no knowledge of the harassment.  *See Burlington*

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54, 765–66 (1998); *Faragher*, 524 U.S. at 807–08.[6]

An employer is strictly liable for sexual harassment by a supervisor whenever that harassment

"culminates in a tangible employment action, such as discharge, demotion, or undesirable

reassignment."  *Ellerth*, 524 U.S. at 765.  And the employer may be vicariously liable for the

supervisor's conduct even when the supervisor's harassment does not culminate in a tangible

employment action.   But, in those circumstances, "the employer may raise an affirmative

defense to liability, subject to proof by a preponderance of the evidence: 'The defense comprises

two necessary elements: (a) that the employer exercised reasonable care to prevent and correct

promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably

failed to take advantage of any preventive or corrective opportunities provided by the employer

or to avoid harm otherwise.'"  *Pa. State Police v. Suders*, 542 U.S. 129, 137–38 (2004) (quoting

*Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807).

   Here, FCO argues that Bruce's *quid pro quo* claim must be dismissed because he admits

in his complaint that he did not notify FCO of any acts of alleged harassment.  Although FCO is

---

[6] Although each of these cases involved claims of hostile work environment rather than *quid pro quo* harassment, the *Ellerth* Court stated that the distinction between hostile work environment claims and *quid pro quo* claims is relevant only with respect to the determination whether the employee experienced actionable sexual harassment.  Once the court (or the jury) has determined that the employee experienced sexual harassment, the same standard is applied to determine whether the employer may be held vicariously liable for the harassment of its employee, irrespective of whether the plaintiff asserts a claim for hostile work environment or *quid pro quo* harassment.  *See Brown v. Perry*, 184 F.3d 388, 394–95 (4th Cir. 1999).

correct that Bruce decided not to report Carroll's alleged behavior, it overlooks Bruce's claim

that Carroll was his supervisor.  According to Bruce, Carroll had the ability to take tangible

employment actions against him, as she issued him "a total of five 'write-ups' for violations of

company policies."  (Compl. at 7.)  *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2454 (2013)

(holding that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if

he or she is empowered by the employer to take tangible employment actions against the

victim").  Bruce also explains that, when he was terminated, one of the reasons given for his

termination was his negative response towards [Carroll]," suggesting that she had involvement in

the decision to terminate him.  (Compl. at 8.)  Bruce, in sum, alleges facts to plausibly support

that Carroll was his supervisor and, accordingly, the court will not dismiss his *quid pro quo*

harassment claim.

### B.  Retaliation

Bruce argues that he was terminated from his job at FCO because he opposed Carroll's

alleged sexual advances and told her to leave him alone.  To make a claim for retaliation, the

plaintiff must establish the following three elements: *(1) he engaged in a protected activity*; (2)

he suffered an adverse employment action; and (3) there is a causal connection between the

protected activity and the adverse employment action.  *Holland v. Washington Homes, Inc.*, 487

F.3d 208, 218 (4th Cir. 2007) (emphasis added).  There are two categories of protected activities:

(1) "opposition" and (2) "participation."  *Equal Emp't Opportunity Comm'n v. Navy Fed. Credit

Union*, 424 F.3d 397, 406 (4th Cir. 2005).  "[P]rotected oppositional activities may include

staging informal protests and voicing one's own opinions in order to bring attention to an

employer's discriminatory activities as well as complain[ts] . . . about suspected violations."  *Id.*

(citations and internal quotation marks omitted).  Activities that constitute "participation" may

include "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in

an investigation, proceeding, or hearing under Title VII." *Laughlin v. Metro. Washington*

*Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also* 42 U.S.C. § 2000e-3(a).

     FCO argues that Bruce fails to state a claim upon which relief may be granted because

opposing sexual advances does not constitute protected activity.  Although the court is skeptical

that Bruce makes a claim for retaliation,[7] there appears to be some split in authority on whether

rebuffing sexual advances may be considered protected activity under Title VII.  *Compare*

*Fleming v. South Carolina Dep't of Corrs.*, 952 F. Supp. 283, 294 (D.S.C. 1996) ("The

defendant maintains that refusal to submit to a supervisor's sexual advances is not opposition

under Section 704(a).  However this court disagrees."), *with Yancey v. Nat'l Ctr. on Insts. and*

*Alts.*, 986 F. Supp. 945, 955 n.14 (D. Md. 1997) ("[The plaintiff] seems to allege that [her

supervisor] retaliated against her by 'writing her up' after she refused his sexual advances.  This

is not an appropriate retaliation claim."); *see also Maiden v. Cnty. of Albemarle*, No.

3:09CV00034, 2009 WL 2511951, at *4 (W.D. Va. Aug. 17, 2009) (determining the plaintiff

failed to state a claim for *quid pro quo* sexual harassment where he "attempt[ed] to couch his

retaliation claim in the guise of a quid pro quo claim").[8]  Because the *quid pro quo* claim is

continuing in any event, the court will not dismiss Bruce's retaliation claim at this time.

     **C.  Religious Discrimination**

     Bruce claims disparate treatment based on his religious beliefs as a Christian, asserting

that Muslim employees were allowed to keep scripture on their desks while he was not permitted

to do so.  To make a disparate treatment claim based on religion, the plaintiff "must demonstrate

that the employer treated her differently than other employees because of her religious *beliefs*."

---

[7] Bruce appears to repackage his *quid pro quo* claim as a claim for retaliation.

[8] Unpublished opinions are cited not as precedent but for the persuasiveness of their reasoning.

*Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996).  Bruce alleges broadly that Muslim employees were allowed to keep scripture on their desks, but does not refer to even a single instance in which an FCO supervisor explicitly told Muslim employees this conduct was acceptable, or noticed Muslim employees displaying scripture and failed to respond.  The court cannot conclude from a single instance in which Bruce was asked not to keep his Bible on his desk that FCO was treating him differently from employees of another religion.  Accordingly, Bruce's religious discrimination claim must be dismissed.

### D.  Wrongful Discharge

Maryland recognizes the common law tort of wrongful discharge.  *See Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981); *see also King v. Marriott Int'l Inc.*, 866 A.2d 895, 700–01 (Md. App. 2005).  "In order to establish wrongful discharge, the employee must prove by a preponderance of the evidence, that (1) []he was discharged; *(2) h[is] discharge violated a clear mandate of public policy*; and, (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee."  *King*, 866 A.2d at 700 (emphasis added).  However, "if the relevant public policy is contained in a statute and the statute provides a remedy, the tort of wrongful discharge is not available."  *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245–46 (Md. App. 2002); *see also Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 774 (4th Cir. 1998).

In this case, Bruce bases his wrongful discharge claim on FCO's alleged discriminatory and retaliatory conduct.  But Title VII affords him a remedy against those unlawful practices, thus rendering his Maryland law claim "redundant and inappropriate."  *Owen*, 161 F.3d at 774.  That Bruce's Title VII claims may be unsuccessful does not mean the remedy provided by Title VII is somehow inadequate, nor does it alter the above analysis.  (*See* Bruce Opp., ECF No. 8, at

7–8 (attempting to argue that, should the court dismiss Bruce's Title VII claims, his wrongful

termination claim would not be impermissibly duplicative).)  Accordingly, Bruce cannot

maintain a separate cause of action for wrongful discharge, and it will be dismissed.

## CONCLUSION

For the reasons stated above, FCO's motion will be granted in part, as to Bruce's claims

for hostile work environment, religious discrimination, and wrongful termination, and otherwise

denied.  A separate order follows.


June 30, 2014                                          _____/s/_____
Date                                                         Catherine C. Blake
                                                             United States District Judge